## PREMIER MALT PRODUCTS CO. v. KASSER et al.

District Court, E. D. Pennsylvania. December 2, 1927.

No. 4159.

1. Trade-marks and trade-names and unfair competition ⊙➾70(1)—One who misleads purchasers into buying one product, thinking that they are buying another, is liable to producer, manufacturer, or dealer in other product.

Every producer, manufacturer, and dealer has property right in favor with which his product is regarded by the purchasing public, and one deceiving purchasers, and thereby robbing such producer or manufacturer or dealer of sales which he would otherwise make, by misleading purchaser to buy another product, is guilty of actionable wrong.

2. Trade-marks and trade-names and unfair competition ⊙➾70(3)—Seller of "Blue Ribbon" product held not entitled to injunction, on ground of unfair competition, against one using name "Blue Anchor" with similar label.

Defendant selling product under name of "Blue Anchor," with label similar to that of plaintiff, whose product was designated as "Blue Ribbon," was not guilty of unfair competition, such as to warrant an injunction, where, though defendant's package imitated and was suggested by plaintiffs, typography of defendant's labels and color scheme apparently originated wholly with his printer, and resemblance was largely matter of opinion, not subject to be determined by any fixed standard.

3. Torts ⊙➾3—Legal wrong must have correlative legal right.

For every wrong there must be a correlative legal right, and loss or damage alone is insufficient, unless there is an actual legal injury.

In Equity. Suit by the Premier Malt Products Company against Herman Kasser, doing business as the Blue Anchor Malt Distributing Company and the Philadelphia Malt Extract Company, for an injunction. On trial hearing, on pleadings and proofs. Decree dismissing plaintiff's bill.

Paul C. Wagner and Joseph S. Clark, Jr., both of Philadelphia, Pa., and Edward S. Rogers and Allen M. Reed, both of Chicago, Ill., for plaintiff.

Joshua R. H. Potts and T. Bertram Humphries, both of Philadelphia, Pa., for defendant Kasser.

E. Hayward Fairbanks, of Philadelphia, Pa., for defendant Philadelphia Malt Extract Co.

DICKINSON, District Judge. The conclusion reached is that the bill should be dismissed, with costs.

### Discussion.

The bill is based upon averments of registered trade-mark infringement and of unfair competition. Each party is the owner of a registered trade-mark. One is known as a Blue Ribbon and the other as a Blue Anchor. The trade-mark infringement charge is not very vigorously pressed, and we find that it has not been made out. [1, 2] The unfair competition charge is the real one. The difficulty in most cases of this general kind is to get a grasp of just what it is which the plaintiff had of which the defendant has deprived him. The first concept of the wrong done in these cases was very definite. It was that the defendant had palmed off his own make of product for that of the plaintiff. This was a wrong both to the plaintiff and to the purchasing public as well. It was a trespass upon a clearly defined right. Every producer, manufacturer, and dealer even has a property right in the favor with which his product is regarded by the purchasing public. To deceive purchasers is a wrong done them, and to thereby rob a plaintiff of sales which he would otherwise make is a wrong to him. The source of this property right was the value of a good name. It is at least doubtful whether it has to-day any value. It is certain that, if litigation is any test, dealers no longer value it.

The complaint to-day is never that the defendant has been guilty of deception respecting the producing origin of what is sold, but that the defendant has made advertising appeals similar to those in use by the plaintiff. The sales appeal to-day is not in the

merits of what is sold, vouched for by the name and reputation of the producer, but is wholly to the eye and to the ear of the purchaser. No one seems to know just what subtle thing it is in which the appeal subsists. Sale cries seem to affect the imagination of buyers, just as battle cries do warriors. Whether such slogans have any real value or not, all dealers ascribe a value to them. Much of whatever value they have may be ascribable to association of ideas, although this seems to be rather far-fetched. Blue ribbon is associated with the thought of excellence, at least in horse flesh. The color scheme which the package presents to the eye gives it attractiveness. This plaintiff thinks it has something of value in these two features.

What is that, however, in which the plaintiff has a property right? A trade-mark undoubtedly; but this is a mark of origin, and the packages here could not be found to work any confusion in this respect, as the name of the producers is plainly indicated. A name of designation is the subject of property, but the name Blue Anchor could not be said to be the same in name as Blue Ribbon, etc., or deceptively similar. There could scarcely be said to be any right of property in the attractive appearance of a sales package. What is commonly said is that one has the right of protection against the use by another of packages which are of deceptive appearance. This, however, is a meaningless phrase, until you write into it the thought of in what is the deception. If, as already said, it misleads purchasers into buying one make, thinking they are buying another, such a wrong is a legal injury. There is, however, as we have also already found, no charge here of such an injury.

[3] What right (beyond the right above mentioned) has the plaintiff? In the old days molasses was sold from the barrel into the jug or pitcher of the purchaser. A dealer conceives the idea of selling it in cans of convenient size and attractive appearance. This changed method takes with customers, and all ask for molasses in cans. Outside of patent, trade-mark, or protection of origin rights, what legal right to the exclusive use of his improved sales method would this first introducer have? We cannot think of a legal wrong, without the thought of a correlative legal right. Thus no one can complain of a wrong without first showing a right. Loss or damage alone will not do, because there may be great damage without a legal injury, just as there may be a legal injury without damage. There must be both the injuria and the damnum to give a legal cause of action, and this remains true notwithstanding the legal fiction of nominal damages. Indeed, this truth made the legal fiction logically necessary. There is always in the back of the commercial head the thought of unfairness in competition.

In the supposititious case we have instanced, the originator of the method of selling molasses in cans would resent the intrusion of another dealer upon what he regarded as his peculiar field. In his eyes this would be not merely unfair competition, but downright robbery. Along with the general tendency of late years to substitute the "elastic chord of feeling for the golden metewand of the law," there has grown up the thought of judging unfair competition cases by the test of taking a broad survey of the whole case, and making the finding whether on the whole the defendant is reaping an unfair advantage at the expense of the plaintiff. There is something appealing in the use of this test. We all have a more or less vague and variable standard of what we call justice, which we are prone to apply and because it is ours we think highly of it. It is, however, usually a sense or mere sentimental feeling, which has nothing in common with a reasoned result, and, when we are dominated by it, we resent with something like irritation the introduction of logical processes to test the soundness of this sense of what is right.

The objection to this broad general view survey of the whole case is the utter absence of any real standard of right. Whoever is doing the judging fixes his own standard, so that there is no rule, but a mere ipse dixit, the rescript of the Roman emperor. There is in consequence no rule but a variable standard, which changes with the mental temperament of him who judges. Some minds are quick to see resemblances between compared things; others are alert to detect differences. The instant case affords a good illustration of these differences in men.

We make the finding, for whatever it may be worth, that we see such a strong resemblance between the sales packages of the plaintiff and defendant as to carry the conviction that one suggested the other and that the defendant's package is an imitation of that of the plaintiff. We must qualify this, however, with the further finding that, so far as this is due to what may be called the typography of the labels, including the color scheme, this originated wholly with the printer, and he had not seen at that time the label of the plaintiff. The printer so testified, and

.we believe him. There was that in his personality and manner of testifying which commanded faith and confidence in the truthfulness of his testimony. None the less, we think we see a strong resemblance in appearance between the two packages, and so find.

There is nothing surprising in the coincidence that counsel for plaintiff sees the resemblance even more clearly than we do, while counsel for the defendant can see only the differences between the two labels. The latter saw or thought he saw that the impression of similitude (so far as it existed) was due wholly to the color scheme. To show this he reproduced the two labels in plain black and white, pointing to what, as he saw it, was the then marked absence of all resemblance between them. Counsel for plaintiff criticized this method of test as wholly unsatisfactory and valueless, but admitted that the absence of color brought out the dissimilarities strongly. Now comes the circumstance which bears upon this "general resemblance" test. To the eye of the trial judge the black and white comparison emphasized strongly the resemblance between the labels. We are quite prepared to accept the testimony of counsel as to the result of this comparison rather than that of the trial judge, but none the less the incident does bring out the absence of any real standard of comparison, and tends to show that the "general resemblance" is wholly personal to the trier of fact.

The cases which deal with the subjects of infringement of trade-marks and unfair competition are almost numberless, and altogether too numerous to list. When put to it to formulate a legal doctrine upon which to plant a ruling, the doctrine is always the old one of a protection of the right to have the origin of production secure against fraudulent imposition. This of late years, however, as we have said, is not the right which is valued, nor is this the protection sought. The real right which is asserted, and the wrong sought to be prevented, is well.summed up in the closing appeal made to us in the very able paper book submitted on behalf of the plaintiff. "Enterprise, novelty, and attractive advertisement" are without doubt to-day great aids in promoting the business of this plaintiff. We can well understand its feeling of resentment against "the craft" and "skill in refinement of imitation" employed to give to a competitor the advantage of like "enterprise, novelty, and attractiveness in advertisement" of rival products. Imitation is said to be the sincerest form of flattery, and our trouble is in finding a legal wrong in such flattery, unless it takes the form of palming off the imitation product and imposing it upon purchasers as that of the plaintiff.

There is no justification here of a finding that the defendant has sought to palm off its product as that of the plaintiff. The real complaint is of an effort to boost the sales of his product by the like method of "attractive" advertising which the plaintiff has employed. This is in a very real sense unfair, but is not an unfairness which the law can enjoin, because the plaintiff has neither a copyright nor a patent right to this method. We are unable to find in this case any right of the plaintiff upon which the defendant has trespassed, and, in the absence of any such right, find no equity in the bill.

A decree dismissing the bill, with costs to defendant, for want of equity, may be submitted.